UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FIRENET TECHNOLOGIES, LLC,<br><br>                              Plaintiff,<br><br>-against-<br><br>KEMP TECHNOLOGIES INC.,<br><br>                              Defendant. | Civil Action No.: 18-cv-5564<br><br>**Jury Trial Demanded** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff FireNet Technologies, LLC ("FireNet" or "Plaintiff"), by way of this Complaint against Defendant KEMP Technologies Inc. ("KEMP" or "Defendant"), alleges as follows:

**PARTIES**

1. Plaintiff FireNet is a limited liability company organized and existing under the laws of the State of Georgia, having its principal place of business at The Forum, Suite 140, 3930 E. Jones Bridge Road, Peachtree Corners, GA 30092.

2. On information and belief, Defendant, KEMP, is a Delaware corporation, having its principal place of business at 1540 Broadway, Floor 23, New York, NY 10036.

**JURISDICTION AND VENUE**

3. This is an action under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, for infringement by KEMP of U.S. Patent No's. 6,317,837; 7,739,302; 8,306,994; and 8,892,600 ("Patents-in-Suit").

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. KEMP is subject to the personal jurisdiction of this Court because, *inter alia*, on information and belief, (i) KEMP is headquartered in the State of New York and (ii) KEMP has

committed and continues to commit acts of patent infringement in the State of New York, including by making, using, offering to sell, and/or selling accused products and services in the State of New York, and/or importing accused products and services into the State of New York.

6. Venue is proper as to KEMP in this district pursuant to 28 U.S.C. § 1400(b) because, *inter alia*, on information and belief, KEMP maintains a regular and established place of business in this judicial district, and KEMP has committed and continues to commit acts of patent infringement in this judicial district, including by making, using, offering to sell, and/or selling accused products and services in this district, and/or importing accused products and services into this district.

## BACKGROUND

7. On November 13, 2001, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 6,317,837, entitled "Internal Network Node With Dedicated Firewall" (the "'837 Patent"). A copy of the '837 Patent is attached hereto as Exhibit A.

8. On June 15, 2010, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 7,739,302, entitled "Network Attached Device With Dedicated Firewall Security" (the "'302 Patent"). A copy of the '302 Patent is attached hereto as Exhibit B.

9. On November 6, 2012, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 8,306,994, entitled "Network Attached Device With Dedicated Firewall Security" (the "'994 Patent"). A copy of the '994 Patent is attached hereto as Exhibit C.

10. On November 18, 2014, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 8,892,600, entitled "Network Attached Device With Dedicated Firewall Security" (the "'600 Patent"). A copy of the '600 Patent is attached hereto as Exhibit D.

11. FireNet is the assignee and owner of the right, title, and interest in and to the Patents-in-Suit, including the right to assert all causes of action arising under said patents and the right to

any remedies for infringement.

## NOTICE AND WILLFULNESS

12.     By letter dated April 12, 2018, FireNet notified KEMP of the existence of the Patents-in-Suit, and of infringement thereof by KEMP and KEMP's customers.  FireNet's letter identified exemplary infringing KEMP products and an exemplary infringed claim for each of the Patents-in-Suit.

13.     By letter dated April 27, 2018, KEMP acknowledged receipt of FireNet's April 12, 2018 letter.

14.     By letter dated May 15, 2018, FireNet responded to KEMP's April 27, 2018 letter, and detailed exemplary infringement allegations by way of a draft complaint attached to the email.

15.     By letter dated May 22, 2018, KEMP stated that it "expect[s] to have completed our analysis of the patents in about two weeks.  We will contact you then to arrange a telephone conference with you to discuss this matter and the FireNet patents."

16.     Accordingly, KEMP has received notice of the Patents-in-Suit and of infringement thereof by KEMP and KEMP's customers.

## COUNT I: INFRINGEMENT OF THE '837 PATENT

17.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

18.     On information and belief, KEMP has infringed, and continues to infringe, the '837 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering to sell, selling in the United States or importing into the United States KEMP networking products and services, including, but not limited to, LoadMaster Virtual (VLM-200, VLM-2000, VLM-5000, VLM-10G), LoadMaster Cloud (VLM-200, VLM-2000, VLM-5000, VLM-10G, Free VLM, VLM-500, WAF, and Metered), LoadMaster Hardware (LM-3000, LM-X3, LM-3400, LM-5600, LM-X15, LM-8000, LM-8020, LM-8020, LM-8020-FIPS), and

LoadMaster Bare Metal (LMB-1G, LMB-2G, LMB-5G, LMB-10G) ("Accused Products").

19.     For example, on information and belief, KEMP has infringed at least claim 37 of the '837 Patent by performing a method of managing access to a network attached device (NAD) in a network arrangement including a first group of nodes defining an internal network and a second group of nodes defining an external network.  A network arrangement that uses Accused Products to manage access to nodes ("KEMP Network") has a first group of nodes, such as, for example, a Connection Broker server, a Session Host, a Web Access server, Active Directory Domain Controllers (internal network), and a second group of nodes, such as client computers accessing the various servers over the Internet (external network).  Ex. E at 7.  In the network arrangement, the external network is connected in communication with the internal network by an intermediate note including a bastion firewall for protecting the nodes of the internal network from unauthorized communication originating at external nodes.  In the KEMP Network, the external network is connected to, and establishes communications with, the internal network through a firewall in the perimeter network.  *Id.*  The internal network includes the NAD, such as a Web Access server.  *Id*.  The Accused Products, such as a KEMP LoadMaster, determine for each and every request for network access to the NAD whether each request for network access to said NAD is authorized.  The Accused Products, using, for example, an Access Control List, determine for each packet (request for network access) destined to the NAD (such as a Web Access server) whether it is authorized.  The Accused Products, such as a KEMP LoadMaster, provide network access to said NAD when a request is authorized.  The Accussed Products, such as a KEMP LoadMaster, deny network access to said NAD when a request is not authorized.  In the above KEMP Network arrangement, the NAD is protected by a dedicated NAD firewall, such as one of the Accused Products, from unauthorized network access requests originating at

the intermediate (for example, Secure Access servers) and internal (for example, Domain Controllers, Connection Brokers, RD Session Hosts, Web Access servers) and external (for example, clients on the Internet) nodes of the network arrangement. KEMP's Access Control list functionality of the Accused Products protects the NAD (such as a Web Access server) from requests originating at internal, intermediate and external nodes based on their IP addresses.

20. On information and belief, KEMP has induced, and continues to induce, infringement of the '837 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its partners, software developers, customers, and end users, to make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the Accused Products by, among other things, providing instructions, manuals, and technical assistance relating to the installation, set up, use, operation, and maintenance of said products, such as deployment guides, installation guides, and instructional videos, all available at the KEMP website.

21. On information and belief, KEMP has committed and continues to commit the foregoing infringing activities without a license.

22. On information and belief, KEMP's infringing activities commenced at least six years prior to the filing of this complaint, entitling FireNet to past damages.

23. On information and belief, KEMP knew the '837 Patent existed while committing the foregoing infringing acts, thereby willfully, wantonly and deliberately infringing the '837 Patent.

**COUNT II: INFRINGEMENT OF THE '302 PATENT**

24. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

25. On information and belief, KEMP has infringed, and continues to infringe, the '302 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering to sell, selling in the United States or importing into the United States the

Accused Products.

26.     For example, on information and belief, KEMP has infringed at least claim 1 of the '302 Patent by making, using, offering to sell, selling in the United States or importing into the United States a network arrangement comprising a network client and at least one network attached device (NAD) residing on a same network.  A network arrangement that uses Accused Products to manage access to nodes ("KEMP Network") has, for example, at least one Web Access server (NAD) residing on it.  Ex. E at 7.  In the KEMP Network, a NAD server is disposed between the network client and the NAD.  For example, a KEMP LoadMaster is disposed between a client and the Web Access server (NAD), residing on the same local area network (LAN).  *Id.*  In the KEMP Network, the NAD server being configured to electronically communicate with the NAD over a connection.  For example, the KEMP LoadMaster is configured to communicate with the Web Access server.  *Id.*  The NAD server is further configured to receive a request contained in a data packet for network access to the NAD.  In the KEMP Network, the KEMP LoadMaster is configured to receive a request, contained in, for example, a TCP/IP packet, to access the Web Access server.  The NAD server includes computer executable instructions that, upon execution, cause the NAD server to determine whether the header of a received data packet containing the request for network access includes at least one of an IP address of a network source, an IP address of a network destination, and a route of the data packet.  The KEMP LoadMaster includes executable instructions that processes incoming packets to determine, among others, the presence of an IP Source Address field.  The NAD is further configured to filter the data packet based at least on an IP address in a header of the data packet.  The Web Access server is configured to use, for example, an Access Control List to filter the data packets based on, for example, the IP Source Address field in the packet header.  Upon execution, the computer

executable instructions further cause the NAD server to determine whether the received request for network access to the NAD is authorized.  Upon execution, the executable instructions cause the KEMP LoadMaster to reference an Access Control List, to determine whether the request for the Web Access server contained in the TCP/IP packet is authorized.  Upon execution, the computer executable instructions provide the network client with network access to the NAD only if the request for network access is authorized, such that the NAD is protected from unauthorized access requests from the network client and other devices in a manner that is in addition to any protection afforded by a firewall.  In addition to the protection afforded by a firewall as shown in Ex. E at 7, the instructions executing on the KEMP LoadMaster provide the network client, and other network devices, such as Internet clients, with access to Web Access server (NAD) only if the requests are authorized.

27.     On information and belief, KEMP has induced, and continues to induce, infringement of the '302 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its partners, software developers, customers, and end users, to make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the Accused Products by, among other things, providing instructions, manuals, and technical assistance relating to the installation, set up, use, operation, and maintenance of said products, such as deployment guides, installation guides, and instructional videos, all available at the KEMP website.

28.     On information and belief, KEMP has committed and continues to commit the foregoing infringing activities without a license.

29.     On information and belief, KEMP's infringing activities commenced at least six years prior to the filing of this complaint, entitling FireNet to past damages.

30.     On information and belief, KEMP knew the '302 Patent existed while committing the foregoing infringing acts, thereby willfully, wantonly and deliberately infringing the '302 Patent.

## COUNT III: INFRINGEMENT OF THE '994 PATENT

31.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

32.     On information and belief, KEMP has infringed, and continues to infringe, the '994 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering to sell, selling in the United States or importing into the United States the Accused Products.

33.     For example, on information and belief, KEMP has infringed at least claim 10 of the '994 Patent by performing a method comprising processing, by a network attached device (NAD) server coupled to an internal network, a request for network access to a NAD device.  An Accused Product, such as a KEMP LoadMaster, is coupled to a local area network (LAN).  Ex. E at 7.  The KEMP LoadMaster processes a request for network access to, for example, Web Access server (NAD).  The NAD device coupled to the NAD server and configured to receive communication from an internal network only by way of the NAD server.  The Web Access server is coupled to the Accused Product (KEMP LoadMaster) and the Web Access server is configured to receive communications only through the KEMP LoadMaster.  The request for network access includes a data packet that includes at least an IP header.  The request for network access is a TCP/IP packet that includes an IP header.  The NAD server comprises a NAD server firewall.  The KEMP LoadMaster includes the firewall functionality, such as Access Control Lists, which protects the Web Access server (NAD) from undesirable requests.  KEMP determines, by the NAD server firewall, whether the request for network access to the NAD should be authorized or denied based on a filtering of at least the IP header of the data packet of the received request for network access to the NAD.  By using the firewall functionality in the

Accused Product, such as the KEMP LoadMaster, KEMP determines whether the request for accessing Web Access server should be authorized or denied, such as based on a filtering of the IP header of the data packet with the request.  KEMP processes, by the NAD server, the data packet for communication with the NAD and enabling access to the NAD upon determining that the requested network access to the NAD should be authorized.  The Accused Product, such as the KEMP LoadMaster, processes the data packet for communication with the Web Access server and enables access to the Web Access server when a request is determined as authorized.  KEMP blocks, by the NAD server, access to the NAD upon determining that the request for network access to the NAD should be denied.  For example, the Accused Product, such as the KEMP LoadMaster, blocks the request for accessing the Web Access server, if the KEMP LoadMaster determines that the request should be denied.

34. On information and belief, KEMP has induced, and continues to induce, infringement of the '994 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its partners, software developers, customers, and end users, to make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the Accused Products by, among other things, providing instructions, manuals, and technical assistance relating to the installation, set up, use, operation, and maintenance of said products, such as deployment guides, installation guides, and instructional videos, all available at the KEMP website.

35. On information and belief, KEMP has committed and continues to commit the foregoing infringing activities without a license.

36. On information and belief, KEMP's infringing activities commenced at least six years prior to the filing of this complaint, entitling FireNet to past damages.

37. On information and belief, KEMP knew the '994 Patent existed while committing the foregoing infringing acts, thereby willfully, wantonly and deliberately infringing the '994 Patent.

## COUNT IV: INFRINGEMENT OF THE '600 PATENT

38. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

39. On information and belief, KEMP has infringed, and continues to infringe, the '600 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering to sell, selling in the United States or importing into the United States the Accused Products.

40. For example, on information and belief, KEMP has infringed at least claim 8 of the '600 Patent by performing a computer-implemented method as set forth in the claim. Specifically, KEMP receives, by a first computing device coupled to an internal network, data packets over the internal network. Ex. E at 7. In the KEMP Network, an Accused Product such as a KEMP LoadMaster connected to a local area network (LAN) receives data packets over the LAN. *Id.* At least some of the data packets are sent to the internal network from an external network. *Id.* At least some of these packets are sent by an external network, such as devices outside the KEMP Network connected to the Internet. KEMP examines, by the first computing device, the data packets to determine whether the data packets contain an IP address associated with an attached device coupled to a second computing device. *Id.* The Accused Product, such the KEMP LoadMaster, examines the data packets to determine whether they contain an IP address associated with an attached device, such as a hard disk or other memory, coupled to a second attached device, such as the Web Access server. In the KEMP Network, the second computing device is in communication with the first computing device and the second computing device is isolated from the internal network. *Id.* The Web Access server is in communication with the KEMP LoadMaster and the Web Access server is not accessible to other devices, except through

the KEMP LoadMaster. KEMP filters, by the first computing device, data packets by determining whether the IP address in a header of the data packets is valid to determine whether to authorize data packets containing information indicative of a request for access to the attached device. The Accused Products, such as the KEMP LoadMaster, using an Access Control List, filter data packets by determining based on the IP address in the packet header, whether to authorize information indicative of the request in the packet for access of the hard drive or other memory of the Web Access server. KEMP reformulates, by the first computing device, the data packets for communication to the second computing device coupled to the attached device in response to authorizing the data packets containing the information indicative of the request for access to the attached device. In response to authorizing the data packets containing information indicative of the request for access of the Web Access server's hard drive or other memory, the Accused Product reformulates the data packets by changing the fields in the header, decrypting, and/or re-encapsulating the packet into another frame, for communication with the Web Access server that is coupled to the hard drive or the other memory.

41. On information and belief, KEMP has induced, and continues to induce, infringement of the '600 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its partners, software developers, customers, and end users, to make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the Accused Products by, among other things, providing instructions, manuals, and technical assistance relating to the installation, set up, use, operation, and maintenance of said products, such as deployment guides, installation guides, and instructional videos, all available at the KEMP website.

42. On information and belief, KEMP has committed and continues to commit the foregoing

infringing activities without a license.

43. On information and belief, KEMP's infringing activities commenced at least six years prior to the filing of this complaint, entitling FireNet to past damages.

44. On information and belief, KEMP knew the '600 Patent existed while committing the foregoing infringing acts, thereby willfully, wantonly and deliberately infringing the '600 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FireNet prays for the judgment in its favor against KEMP, and specifically, for the following relief:

   A. Entry of judgment in favor of FireNet against KEMP on all counts;

   B. Entry of judgment that KEMP has infringed the Patents-in-Suit;

   C. Entry of judgment that KAMP's infringement of the Patents-in-Suit has been willful;

   D. Award of compensatory damages adequate to compensate FireNet for KEMP's infringement of the Patent-in-Suit, in no event less than a reasonable royalty trebled as provided by 35 U.S.C. § 284;

   E. Declaration and finding that KEMP's conduct in this case is exceptional under 35 U.S.C. § 285;

   F. Award of reasonable attorneys' fees and expenses against KEMP pursuant to 35 U.S.C. § 285;

   G. Award of FireNet's costs;

   H. Pre-judgment and post-judgment interest on FireNet's award; and

   I. All such other and further relief as the Court deems just or equitable.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Fed. R. Civ. Proc., Plaintiff hereby demands trial by jury in this action of all claims so triable.

Dated: June 20, 2018

Respectfully submitted,

/s/ Dmitry Kheyfits
Dmitry Kheyfits
dkheyfits@kblit.com
Andrey Belenky
abelenky@kblit.com
Hanna G. Cohen
hgcohen@kblit.com
KHEYFITS BELENKY LLP
1140 Avenue of the Americas
9th Floor
New York, New York 10036
Tel. (212) 203-5399
Fax. (212) 203-6445